Gary Tempson I represent Cody Jansen the defendant appellant in this case who is a South Dakota State Highway Patrol trooper. The case that brings us here commenced in the late evening hours April 14 2015 on a rural road in Clay County South Dakota. Trooper Jansen observed a car driving erratically at night pulled it over that car was driven by one Troy Rokusek who failed field sobriety tests at the scene and trooper Jansen then placed him under arrest for driving while intoxicated and transported him to the law enforcement center in Vermilion South Dakota. That's the county seat and it's co-located with the city of Vermilion Police Department. He pulled into an area known as the Sally Port I think the court knows what that is and took Mr. Jansen out of the Tracy Wusterwald who was a medical tech who had been summoned and was one of the persons in Vermilion authorized to do blood draws for DWI analysis. She was there and Mr. Rokusek had consented to a blood draw that's why the trooper had summoned her there. When they got out of the vehicle trooper Jansen observed that Rokusek was compliant seemed calm had consented to the blood draw and so as for his personal comfort released the handcuffs took him out of the handcuffs and Mr. Rokusek then said well I want to go to the hospital and have the blood drawn and I don't want her Ms. Wusterwald who is visibly eight months pregnant standing in the Sally Port I don't want her to do it so I'm withdrawing my consent and trooper Jansen then says well for withdrawing your consent I have to go get a warrant and you're sitting on your this bench you need to get up off the bench so I can place the handcuffs on you. He didn't want to leave him unrestrained in the room with Ms. Wusterwald he was concerned for her personal safety he believed and observed that Rokusek was getting more agitated he ordered him three times to get up off the bench all three times Rokusek failed to comply so the trooper lifted him up off the bench and was going to turn him around to place the cuffs on him behind his back again and that point he felt that Rokusek stiffened and arched his back and leaned back toward him and was actively resisting at that time and so he performed a maneuver took him to the ground resulting in injuries but then did handcuff Mr. Rokusek and I think the district court made a couple of errors here first of all the district court kind of tried to analyze this in a frame by frame analysis I realize technically when you're dealing with digitized video frame by frame is kind of an archaic phrase but and failed to consider the totality of the circumstances as we are instructed by the Supreme Court and earlier decisions in this case they tried to analyze it well can you see a move did you see a move or not and that ignores the totality of the could be perceived perhaps by viewing the video I don't disagree with that but the standard is what was the reasonable perception of the officer was it reasonable for him to believe that move however slight was resistance and it was just to take him to the floor he wasn't trying to injure him he just wanted to get him to the floor that's primarily what law enforcement officers try to do you get somebody on the ground so you can control them better well like I said and he was much bigger man he's a bigger man there's no doubt about that it's not like he just folded him to the ground he picked him up and right well you know I guess the video speaks for itself the other thing I think and and I think it directs directly speaks to that is judge Pearsall spent a lot of time talking about the double chicken wing maneuver and this is a maneuver not taught by the South Dakota Highway Patrol and that somehow that's indicative of constitutionality this court as far back as coal versus bone and I can't remember the date of that decision right now but I think it was at least in the 1990s says that internal department standards are not relevant for constitutional analysis and more recently matter of fact just April 2nd of this year the US Supreme Court in a kind of similar scenario affirmed the grant of qualified immunity reversing the Ninth Circuit Court of Appeals in that case is Kinsella if I pronounce that right Casilla versus who weighs I think k-i-s-e-l-a-v-h-u-j-e-s it's a per curiam opinion that situation Tucson police officers get a call that there's a woman acting erratically and carrying a knife they respond to the call and there's a lady standing in the driveway but it's not the suspect miss Hughes then comes out of the or miss Hughes is lady standing in the driveway the other lady with the knife comes out she's not brandishing the knife and she's not threatening the lady or the officers but she is resisting commands refute ignoring commands to drop the knife isn't this a totally different case I mean just think about this this guy is arrested and taken into custody he's put into the black the back of a police car and I don't know of any place in the world where people are not at least involved we know he's unarmed he's in the back of the police car now he's transported to the Sally port so what you know you've got is a person who's you know much lighter much smaller and is intoxicated and you've got a much larger officer you know he's not armed and that doesn't seem at all like somebody brandishing a knife or holding a knife no but I think I think the similarity is this that the woman in the case she did not feel threatened at all and was not being obviously threatened but nonetheless an officer drew his revolver and shot her four times in the US Supreme Court found that that was qualified immunity that his concern the officers perception that he was concerned for the safety of a woman in the proximity was sufficient for qualified immunity and that's why I think it's applicable here in this case the nurse in the video is already starting to back away she looks quite surprised at what's going on but she's moving away and officers got physical contact with the defendant yes physical contact but he has to leave the room to do the warrant application and so he wants him cuffed because yeah the guy's not very big but this woman's eight months pregnant and she's backing away and like Casella the Supreme Court just decided even though the lady in says she herself didn't feel threatened the Supreme Court said the officer's perception that she might be in danger was sufficient for qualified immunity it has to be reasonable I think it does and I think it's reasonable for an office she was a good 10 feet away yeah but if you have somebody unrestrained left alone and a pregnant woman is particularly vulnerable I understand the desire to get him handcuffed but I think the question is is is he reasonably protecting her when he feels this slight bump back and he's much much larger than than the than the plaintiff to use the amount of force that he used I think that's really well I think it is the question your honor but the thing is he was attempting to get the mr. racusic handcuffed and his perception was that he was resisting and to overcome that resistance to cuff him and thus affect the protection of the danger or potential danger that he perceived you know since Mullinex versus Luna every one of the Supreme Court cases has changed the standard from a reasonable officer to every officer in Casella they said that it must be as clearly established that every officer would realize his action was unlawful and in Mullinex a 2015 case that a clearly established right is one that is sufficiently clear that every my reasonable official would have understood that what he is doing violates that right and you'd have to say every single officer when you feel somebody's resisting would know that essentially no other officer would have taken this action and I think I think that's contrary I think to what the Supreme Court is telling us it's a very high bar and I think the officer you know the disparity in size you can't really control that you don't get to by whom you're arrested and you know you use sufficient force to affect the object which in this case was to cuff him so that he ended what he perceived to be at least a potential threat to Ms. Wusterwald so he could go execute the warrant after Mr. Racusic's withdrawal of consent to to the blood test and so I just don't think you can say that every officer would have seen that this was of the existing law Mullinex tells us that and that was a 15 case and there are others earlier so I'll save my time for rebuttal unless the court has further questions morning your honors Jeffrey storms for the plaintiff I will start by saying I was actually reading the acres Bach case early this morning for the proposition that a video of the incident can create a genuine issue of material fact ironic that that came up earlier I do want to talk about kind of the broader kind of question that you pose in the preceding argument about we're now seeing plaintiffs citing Brown and citing Shannon in some cases with a lack of success and I think what we're seeing is we're seeing defendants trying to push the bounds of of some of these decisions because the proposition to your point earlier your honor that force is least justified against nonviolent misdemeanors who are not fleeing who are not actively resisting and are now posing a threat to officers has not been critiqued by the Supreme Court at all probably in either mode or stunned there'd be no question that he'd be there was a fall and injury but if you start there I mean he's sufficiently resistant that force and problem and not just a minimalist force can be used to control him so that he can be cuffed now why do we draw the line tasers okay but this this takedown was not when it comes to take downs we go back to the proposition under chambers that we are allowed to look at the extent of the injury because it informs us as to the degree of force used taser usage either in a drive stun or in a discharge mode is not likely to cause the types of injuries that we've seen in Montoya that we see here in this case with missing two teeth and I think that's important for takedown cases because takedowns can occur in a variety of different manners some of which are impermissible and the the South Dakota District Court by no means said there was a violation of policy therefore there was an unconstitutional act that's certainly not the case but it does inform us you know that what the Cole case says is that just because you violate policy doesn't necessarily mean you've violated the Constitution and so here we're looking at an impermissible act where the gram factors do weigh in favor of de minimis force more than de minimis force which was obviously used here as reflected in the video resulted in a substantial injury and our case law under Brown Shannon Copeland Montoya and small all tell us that this is the type of situation where qualified immunity is not warranted it's very different than cases like a lures investors the the Blazek opinion I believe also I've argued this before judge Bruner before I believe that his dissent was the proper opinion there but as I read the majority in that opinion what you can only understand from it is that there was a higher level of threat and in this case there is no threat that is significant and objectively reasonable your client was being non-compliant wasn't he that under the under the district courts or rulings as they credited the evidence we admitted that he did not stand for handcuffing which is some sort of de minimis war in consequence of inconsequential resistance the passive and everyone disagrees on what that term might be properly but it's that the type of resistance that we look at under and say just because you engage in some passive resistance doesn't create sort of this talisman that allows all force and so although my client and we admit engaged in a certain level of passive resistance and that does not by any means entitle the officer to qualified immunity under war bro the force still and as the video shows objectively if there is any physical resistance at all it's so minimal that it's not even noticeable on the video the video could easily be interpreted by a jury as a lack of physical resistance by mr. testimony that there was no specific warning before the slam and that was a decision that the court made in accordance with the summary judgment standard what's also important to note is that you know as I as I walk through the timeline you know of the video mr. Jansen put your recuse second the double chicken wing at 1255 and he's still with him in that position from 1255 0 0 to what's interesting about that is there is a gap in the video from 1255 17 to 1255 36 so a 19-second gap and how that's been described by affidavit by mr. Jansen's department is that the video stops moving for inactivity so we know he's engaging in no active resistance at that point that's being captured by video then mr. Jansen puts mr. recrucif up against the wall and officer Jansen admits that he had complete control over mr. recusic the entire time that his head was against the wall and as the district court noted when mr. Jansen commenced the slam mr. recusic said was still against the wall so he had this individual in complete control he wasn't a threat and he uses this extreme amount of force that fortunately it resulted in lost teeth that level of force easily could become deadly force in that situation and and that's why the South Dakota his department critiqued him for it they critiqued him the state critiqued him for it because his force was unreasonable they didn't say you used a double chicken wing and as a result your does not control constitutionality and I agree I couldn't agree more your honor that does not control constitutionality at all but I thought that their opinion was particularly well reasoned in terms of a constitutional sense where they walk through how unreasonable his conduct was he wasn't posing a threat he was much larger he used significant force to slam him to the ground he used an impermissible technique so certainly that should be relevant to the consideration and only because of that reasoning with respect to the unreasonableness of it do I think it's really useful in the courts analysis at that point it does appear to be a slight pushback right before the takedown doesn't well so and I'm a former wrestler so my how I view the mechanics may be a little different but if I can step out from the podium as I saw it I kind of move his buttocks back which you would do if you were preparing to shift your hips I do not see mr. Akusek jam him to make him do that I believe that that officer or trooper Jansen is preparing to slam it on the head and that's why he's loaded he's loaded up his weight he's loaded up his hips hips and he's throwing if I were going to play someone in a freestyler Greco-Roman wrestling match that's exactly what I would do I would get my hips back I'd load him up and I would throw them and that's exactly what he did and to do so in these circumstances was entirely unreasonable and we believe that it's well controlled under a number of the clearly established precedents that we cited earlier and for that reason we ask that the court affirm thank you you well here we have it again is somebody's perception of that video that says I don't think it shows this or I think it shows that the standard is would every officer have been mistaken in believing that there was resistance and having concerned for a pregnant woman in the room taking this guy to the ground to stand up from the bench and so forth you know mr. storm talks about defendants using Brown and other cases to try to quote push the bounds the Supreme Court of the United States is pushing the bounds I believe judge Loken earlier referred to it as a scolding but we've got the casella case which I've heard DC versus Wesby which was decided in January of this year and that's famously called the peaches case and that had to do with whether or not somebody was authorized to use a house for partying and and other things of that nature in 2015 Mullenix versus Luna and Mullenix said specifically reasonable as the force is a pure question of law not a factual issue and that was the first case I believe where they went from a reasonable officer to every officer realizing that the the conduct was illegal and there must be a defined that every officer would know that we don't see that kind of precedent in this case where somebody is resisting being handcuffed or at least the officer reasonably believes that resistance is occurring and the guy is injured in a subsequent takedown I haven't seen in the district court's opinion nor in mr. Acoustic's brief any case that shows that clear precision that the Supreme Court since 2015 at least and maybe even earlier has has required with the standard is would every officer have known that reacting to a perceived resistance of being cuffed and believing that there's a potential danger to a nearby pregnant woman be excessive in the takedown the Supreme Court of the United States I think says you have to have almost that precision the the cases continually say we don't require a case exactly on point but in fact they seem to but the district court opinion and and and the opposing brief don't have any cases that are even I think you know close to this factual scenario that would make every officer much less trooper Jansen aware that his conduct was would would be unconstitutional use of force and I will conclude unless the very good I think council thoroughly briefed this and covered I think the court for time thank you your honors